UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/2019

–against–

S7 98-cr-1023 (LAK)
[16-cv-3119 (LAK)]

WADIH EL-HAGE,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Sean Buckley
> Assistant United States Attorney
> Geoffrey Berman
> UNITED STATES ATTORNEY
>
> Alan Mitchel Nelson
> Ezra Spilke
> LAW OFFICES OF ALAN NELSON
>
> *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge*.

Defendant Wadih El-Hage seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel. For the reasons set forth below, the Court concludes that a hearing is unnecessary to resolve the motion and the papers conclusively show that the defendant is not entitled to relief.

2

*Background*

Defendant Wadih El-Hage was convicted of various offenses relating to the 1998 al Qaeda bombings of the United States Embassies in Dar es Salaam, Tanzania, and Nairobi, Kenya after a five-month trial from January to May 2001.  The defendant was represented at trial by Sam Schmidt and Joshua Dratel.  Mr. Schmidt was assigned to the defendant in March 1999 and Mr. Dratel in August 1999.[1]  These attorneys worked with the defendant for over a year to prepare for trial.[2]  During that time, the defendant communicated to his attorneys and claims that he persisted in his desire to testify at trial.[3]

In November 2000, one of El-Hage's co-defendants assaulted a guard at the Metropolitan Correctional Center ("MCC") where both were being held in pretrial detention.[4] Following the assault, conditions in the defendant's unit at the MCC deteriorated and the defendant suffered a mental break, losing all memory of his adult life.[5]  Following a court-ordered psychological examination that assessed the defendant to be competent to stand trial, the trial began as scheduled on

---

[1]    DI 2075 at 1.  Unless otherwise noted, all references to docket items are to the criminal case file, 98-cr-1023 (LAK).

[2]    DI 2035 ¶¶ 29-30.

[3]    *Id.* ¶ 30.

[4]    DI 2075 at 1.

[5]    DI 2035 ¶ 31.

January 3, 2001.[6]  During the trial, the defendant's memory began to return.[7]

On April 26, 2001 after the government rested, the Court asked whether the defendant would testify.[8]  Mr. Schmidt replied that the defendant had "no present intention of testifying."[9]  The Court adjourned.  Mr. Schmidt then visited the defendant at the MCC.[10]  According to the defendant, Mr. Schmidt spent thirty minutes trying unsuccessfully to convince the defendant not to testify, at which point Mr. Schmidt rose to leave and said that he would send "Kris" to prepare the defendant to testify.[11]  The defendant claims that he erroneously believed that "Kris" was a paralegal rather than an attorney.[12]  As a result, he allegedly believed that Mr. Schmidt did not support his decision to testify and would not zealously advocate for him if he insisted on doing so.[13]  The defendant says that he "capitulated" and that Mr. Schmidt spent another five or ten minutes with the defendant before leaving.[14]

---

[6]     DI 2075 at 1.

[7]     *Id.*; DI 2060, Declaration of Sam Schmidt, Ex. 1 at 3.

[8]     DI 2075 at 2.

[9]     *Id.*

[10]    *Id.* at 3.

[11]    DI 2035 ¶ 36.

[12]    *Id.*

[13]    *Id.* ¶ 37.

[14]    *Id.*

4

On the next trial day, the defendant informed the Court of his decision not to testify.[15] The Court allocuted the defendant on his decision and advised him that the decision whether to testify ultimately was his choice to make.[16]  The defendant was convicted, sentenced, then re-sentenced on April 23, 2013 to a term of life imprisonment.[17]  He is serving that sentence at the United States Penitentiary, Administrative Maximum Facility, commonly known as "Super Max."

In March 2016, the defendant made an application for appointment of counsel for the purpose of preparing a motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his sentence on the basis of ineffective assistance of counsel.[18]  The motion gave no indication of the basis for the ineffective assistance claim so the Court denied the application without prejudice to renew in a filing containing a statement of the claim or claims and the basis for them, and an affidavit establishing financial eligibility for appointment of counsel.[19]  The defendant then made another application that included an affidavit, a description of five claims of ineffective assistance, and a renewed request for appointment of counsel.[20]  The Court treated the papers as a motion for relief under Section 2255 and reserved judgment on the request for appointment of counsel.[21]

---

[15]
   *Id.*

[16]
   DI 2075 at 3.

[17]
   DI 2017 at 2.

[18]
   DI 2007.

[19]
   DI 2009.

[20]
   DI 2015.

[21]
   DI 2014.

After receiving and considering the government's response, the Court denied the motion and the request for counsel with respect to all claims but one.[22]  The Court, however, appointed counsel to represent the defendant in pursuing his one remaining claim of ineffective assistance, which is based on the allegation that his trial counsel coerced him not to testify.[23]  This memorandum and order address that claim.

*Discussion*

A claim of ineffective assistance is governed by the standard set forth in *Strickland v. Washington*.[24]  To establish ineffective assistance, the defendant must show that: (1) his "counsel's performance was deficient," and (2) the "deficient performance prejudiced the defense."[25]

The first prong of *Strickland* creates an "'objective standard of reasonableness' for the assessment of attorney performance."[26]  In assessing attorney performance, the Court is obliged to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and not succumb to the influence or "distorting effects of hindsight."[27]  The second prong demands that the petitioner establish an actual adverse effect on the defense.  In other

---

[22]

DI 2023.

[23]

DI 2024.

[24]

466 U.S. 668, 687-88 (1984).

[25]

*Id.* at 687.

[26]

*Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (*quoting Strickland*, 466 U.S. at 688).

[27]

*Id.*

words, it is "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test."[28] Instead, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[29]

The defendant claims that Mr. Schmidt's thirty-minute effort to persuade the defendant not to testify followed by his statement that he would send "Kris" to prepare the defendant for his testimony amounted to coercion and overrode El-Hage's desire to testify.  The Court must inquire whether this alleged conduct was unreasonable and prejudicial to the defense.  The question is not a difficult one.

As the Supreme Court emphasized in *Strickland*, the inquiry into counsel's performance is an objective one.  Counsel's conduct, spending thirty minutes discussing the reasons that weighed against El-Hage testifying, was objectively reasonable.  So too was his statement that a member of his team would come to begin preparing the defendant for his testimony.[30]  The defendant cannot establish coercion on the sole basis of his alleged subjective belief that his counsel would not have supported his decision to testify in the face of objectively reasonable attorney conduct.[31]  The defendant's

---

[28]    *Strickland*, 466 U.S. at 693.

[29]    *Id.*

[30]    *See* DI 2035 ¶ 36; DI 2060, Declaration of Sam Schmidt, Ex. 1 at 4.

[31]    *Compare Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) (finding ineffective assistance of counsel where counsel threatened to withdraw during trial to coerce the defendant not to testify), *with United States v. Aguirre*, 912 F.2d 555, 562-63 (2d Cir. 1990) (holding that counsel did not coerce defendant not to testify by making plain his views that defendant should not do so, to which defendant assented). *See also United States v. Ailemen*, 710 F. Supp. 2d 960, 970 (N.D. Cal. 2008) (stating that the court "cannot find that the trial

baseless assumption that "Kris" and only "Kris" would prepare the defendant to testify does not change the calculus.[32]   Moreover, there is no allegation that Mr. Schmidt acted unprofessionally or threateningly at any point during those thirty minutes at the MCC.[33]   Indeed, the defendant's own account of this interaction describes Mr. Schmidt's actions as measured, considered, and professional.[34]   Thus, the defendant has failed to establish coercion.

---

court unconstitutionally denied defendant the right to testify based solely upon defendant's allegation or subjective belief"); *Haouari v. United States*, 429 F. Supp. 2d 671, 678-79 (S.D.N.Y. 2006) (holding no ineffective assistance where counsel allegedly did not prepare the defendant to testify despite defendant's request to do so, then advised defendant at the close of the government's case not to testify, to which the defendant agreed "as a result of [his counsel's] insistence").

This conclusion is consistent also with other areas of criminal law that require more than a mere subjective belief to establish coercion.  *See, e.g., United States v. Younis*, No. 10-cr-813 (JFK), 2011 WL 1485134, at *4 (S.D.N.Y. Apr. 19, 2011) (explaining that the test of whether consent to a search was the product of coercion is an objective one that considers as part of the totality of the circumstances the potentially "vulnerable subjective state of the person who consents"); *United States v. Baum*, 380 F. Supp. 2d 187, 210 (S.D.N.Y. 2005) (stating that when "a guilty plea is challenged as being the product of coercion, our concern is not solely with the subjective state of mind of the defendant, but also with the constitutional acceptability of the external forces inducing the plea" (internal quotations and citations omitted)).

32

*See* DI 2060, Declaration of Sam Schmidt, Ex. 1 at 4 ("Kristian Larsen was an attorney and an associate in my office . . . I do not have a present recollection of whether I told Mr. El-Hage that if he was going to testify that Mr. Larsen would assist in the preparation for his testimony.  Because of the substantial amount of time that would be needed to prepare Mr. El-Hage, including reviewing testimony, previously admitted exhibits and other documents, it is certainly possible or even likely that I would have had Mr. Larsen assist in the preparation for Mr. El-Hage to testify.  However, final preparation and presenting his testimony would have been done by either myself or Mr. Dratel.").

33

*See* DI 2035 ¶¶ 34, 36 (stating that Mr. Schmidt "*explained*" the reasons that weighed against the defendant taking the stand and "*informed*" the defendant that Mr. Dratel shared the same view, before *standing* to leave, *turning*, and *saying* that Schmidt would sent Kris to prepare the defendant) (emphasis added).

34

*See id.*

8

The defendant has failed also to establish prejudice.  The government notes in its briefs a number of issues that would have presented themselves had the defendant taken the stand.[35]  The Court finds that there is a reasonable likelihood that defendant's testimony would have damaged his defense – and does not find a corresponding likelihood that the testimony would have benefitted him.

The defendant claims that an evidentiary hearing is necessary to resolve the motion and answer the following questions: whether (1) counsel advised the defendant that it was his decision whether to testify, (2) the defendant was told that Dratel or Schmidt would conduct the final trial preparation, (3) Kristian Larsen had adequate experience to prepare the defendant, and (4) the defendant was advised not to testify because of potentially damaging cross-examination.[36]

The first is not an issue on this motion because the defendant does not claim that he was unaware of his right to make the ultimate decision whether to testify.  The trial judge in fact so advised him on the record.[37]  He claims instead that his counsel would not have supported him if he chose to do so.[38]

The answer to the second is irrelevant because even if the defendant was not told specifically that his trial counsel would conduct the final preparation, that fact would not render counsel's statement that Kris would prepare the defendant coercive.  Moreover, postulating how counsel would have prepared the defendant to testify had he not "capitulated" is inappropriate on this

---

[35]

See DI 2017 at 17-19; DI 2060 at 12-16.

[36]

DI 2075 at 10.

[37]

DI 2017, Ex. A at 5138-39.

[38]

DI 2075 at 7.

9

motion and the facts before the Court.  The third is answered by the Schmidt declaration.  Finally, the fourth is irrelevant because the defendant's claim is not one that the advice not to testify was unreasonable, but that it was delivered in a coercive manner.  Accordingly, an evidentiary hearing is unnecessary to resolve the motion.[39]

*Conclusion*

Having reviewed the allegations of the motion and accepted the well-pleaded allegations of fact as true for purposes of this analysis, the Court concludes that the defendant is not entitled to relief and there are no issues of fact that require an evidentiary hearing.[40]  The motion is denied.

A certificate of appealability is denied.  The Court concludes that any appeal herefrom would not be taken in good faith within the meaning of 28 U.S.C. § 1915.

SO ORDERED.

Dated:        April 30, 2019

_____
Lewis A. Kaplan
United States District Judge

---

[39] *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).

[40] *See id.*